**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOHN O'BANNON, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-03-623 |
| FRIEDMAN'S, INC., | * | |
| Defendant. | * | |

\*\*\*\*

**MEMORANDUM OPINION**

Before the Court is a motion for leave to amend a class action complaint filed by John O'Bannon ("O'Bannon"), Sandra Moore ("Moore"), Ronald Hampton ("Hampton"), and Rondall Mitchell ("Mitchell") (collectively, "Plaintiffs") against Friedman's, Inc. ("Friedman's" or "Defendant") alleging racial discrimination in employment under the Civil Rights Act of 1866. Plaintiffs seek to join Federal Insurance Company ("Federal") and St. Paul Mercury Insurance Company ("St. Paul") as defendants and to add separate claims against them for declaratory judgments as to coverage of Friedman's liabilities under its Employment Practices Liability Insurance ("EPLI") policies. For the reasons stated below, the Court will grant Plaintiffs' motion for leave to amend.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On March 6, 2003, Plaintiffs filed a class action lawsuit, No. AW-03-623, alleging racial discrimination in employment against Friedman's, Inc. under the Civil Rights Act of 1866. 42 U.S.C. § 1982 (2006). O'Bannon claims that Friedman's discriminated against him when it chose not to hire him, while Hampton and Moore claim that Friedman's discriminated against them by

1

denying them promotions and compensation while they were employed by Friedman's. Mitchell claims that Friedman's demoted and constructively discharged him because he refused to implement the company's allegedly discriminatory practices. Plaintiffs, excepting Mitchell, also claim that the discrimination they experienced was part of a company-wide policy or trend of race discrimination that pervaded the company's employment practices and that Friedman's maintained an environment hostile to African-American employees.

On September 30, 2004, the proceedings were stayed and the case was administratively closed in order to allow parties to pursue settlement agreements. These negotiations resulted in the settlement of injunctive relief issues in the form of an Interim Partial Settlement Agreement, as well as a "tentative agreement of the parties on classwide monetary relief," which was conditioned on Friedman's obtaining funding for the settlement from Federal and St. Paul. (Pl.'s Mot. to Amend, at 1.)

On January 14, 2005, Friedman's filed a Chapter 11 Petition in the United States Bankruptcy Court for the Southern District of Georgia. During the bankruptcy reorganization process, Plaintiffs' claims in this case were preserved for further litigation. In December 2005, Friedman's emerged from bankruptcy. While recovery of monetary relief on claims against Friedman's is precluded, recovery is permitted against its insurers.

Meanwhile, Federal and St. Paul disputed their liability for coverage of the Plaintiffs' claims and the dispute was brought before the American Arbitration Association ("AAA") pursuant to the arbitration provisions of the policies. Friedman's pursued arbitration for over a year, but dismissed the arbitration proceeding in January of 2006, after the Georgia Supreme Court held that insurance coverage disputes were not subject to binding arbitration under Georgia law. *See Love v. Money*

*Tree, Inc.*, 614 S.E.2d 47 (Ga. 2005). On February 21, 2006, this Court re-opened the case and on March 27, 2006, Plaintiffs filed this Motion for Leave to File an Amended Class Action Complaint to add Federal and St. Paul as defendants. Before filing the motion, Plaintiffs sought and were denied Friedman's consent to file their Motion for Leave to Amend.

## II.    ANALYSIS

Friedman's argues that Plaintiffs' Motion for Leave to File an Amended Class Action Complaint should be denied on several grounds, including lack of supplemental jurisdiction, failure to meet case or controversy requirements, and failure to meet standing requirements. The Court will address these issues in turn.

### A.    Plaintiffs' Declaratory Judgment Claims Are Subject to Supplemental Jurisdiction, As They Share a Common Nucleus of Operative Fact With The Underlying Claim.

This Court has supplemental jurisdiction over Plaintiffs' declaratory judgment claim under 28 U.S.C. § 1367 (2006).  Section 1367, adopted by Congress in 1990, provides that, in cases over which a federal court has original jurisdiction, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* Claims that share a "common nucleus of operative fact" such that it would ordinarily be expected that the plaintiff try the claims in the same proceeding form part of the same case or controversy. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993) (holding that district court has supplemental jurisdiction over state inverse condemnation claim, where original claim is cost-recovery action under CERCLA).

In expounding upon the concept of a "common nucleus of operative fact," the Fourth Circuit has found that supplemental jurisdiction does not envelop claims when one count is "separately maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to the other count," *Hales v. Winn-Dixie Stores, Inc*, 500 F.2d 836, 848 & n.12 (4th Cir. 1974), but that supplemental jurisdiction may be found where the claims "revolve around a central fact pattern," *White v. County*, 985 F.2d at 172. Justification for federal courts to exercise such supplemental jurisdiction "lies in considerations of judicial economy, convenience, and fairness to litigants." *Hales*, 500 F.2d at 853.

In this case, it is undisputed that the Court has federal question jurisdiction over Plaintiffs' original employment discrimination claim, as the claim arises under the Civil Rights Act of 1866. Plaintiffs' declaratory judgment actions against Federal and St. Paul seek to establish indemnity for liability arising from the same facts as the underlying complaint, i.e. alleged instances of discrimination by Friedman's against African American employees and applicants to the company. While a declaratory judgment regarding coverage under Friedman's EPLI policies will focus also on the specific provisions of the policies, the facts regarding the alleged incidents of discrimination will be integral to a determination of whether or not liability on the part of Friedman's, if established, would be covered by its EPLI policies with Federal and St. Paul. The factual connections between the claims at issue and the underlying claim are sufficient, according to the Fourth Circuit's liberal interpretation of 28 U.S.C. § 1367, to constitute a "common nucleus of operative fact."

Moreover, it is expected that a plaintiff would bring these claims in the same proceeding. It is common practice for an insured party, who is a defendant in a case brought by an injured party,

4

to implead her insurer (under Federal Rule of Civil Procedure 14(a)) in order to establish indemnity or to determine the scope of reimbursement. This is commonplace because it makes sense to determine within the same proceeding, not only liability and damages, but also the legal rights and obligations of involved parties with respect to the payment of those damages. Trying this latter issue separately in a different case or court system imposes an unnecessary burden on parties and on the courts. Although Plaintiffs in this case are not insured parties, but rather third-parties seeking declaratory judgments against insurers, the same principles of efficiency and fairness apply. It would be incongruous to suggest that simultaneous resolution of the aforementioned issues makes sense in a case where an insured party has impleaded his insurer, but not in a case where an injured party has sought to join both the insured party and the insurer as defendants. This would be especially nonsensical in the case at bar, where Friedman's is immune from liability damages and Federal and St. Paul are Plaintiffs' only means for recovering on a successful claim.

Policy considerations underlying supplemental jurisdiction, namely judicial economy, convenience, and fairness, all weigh in favor of exercising supplemental jurisdiction. Given that the discrimination claim and the coverage claims will draw from a common set of facts for their resolution, principles of efficiency compel trial of the claims in a single court. In *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992), the Fourth Circuit reiterated its preference for having "all litigation stemming from a single controversy resolved in a single court system." Furthermore, if the issue of coverage is not promptly resolved, parties may have no other option but to commence costly and time-consuming litigation (given that settlement talks cannot proceed without first resolving the coverage issue), without knowing, until a final judgment, whether or not payment may ultimately be secured. This route, which would be unnecessarily expensive, time-consuming, and inconvenient,

would undermine the principles of efficiency and fairness that informed the creation of 28 U.S.C. § 1367. For the aforementioned reasons, the Court has, and chooses to exercise, supplemental jurisdiction over Plaintiffs' declaratory judgment actions against Federal and St. Paul.

> **B.** **Declaratory Relief Is Available To Plaintiffs Because Their Claims Present Justiciable Controversies, Relief Is Prudential, And Plaintiffs Meet Standing Requirements.**
>
>> i.  Plaintiffs' Claims Present Justiciable Cases or Controversies.

Defendant also argues that this Court lacks jurisdiction over Plaintiffs' Declaratory Judgment actions on the ground that these claims do not present justiciable controversies. The Federal Declaratory Judgment Act gives a federal district court the authority, in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2006). The test for whether a case or controversy exists is whether the dispute "is definite and concrete, touching the legal relations of parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-242 (1937).

The Supreme Court held in *Maryland Casualty Co.* that "a dispute between a liability insurer, its insured, and an injured third-party with a claim against the insured over the extent of the insurer's responsibility for that claim" does present an actual controversy for the purposes of the Federal Declaratory Judgment Act. *Nautilus*, 15 F.3d at 375 (citing *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270 (1941)). In this vein, the Fourth Circuit has found that a case or controversy exists between injured third-parties and liability insurers in actions for a declaratory judgment regarding coverage responsibilities, despite the lack of privity of contract between the

insurer and the injured party. *Aetna Casualty & Surety Co. v. Yeats*, 99 F.2d 665, 669 (4th Cir. 1938) (finding that insurer properly joined insured and injured third-party as defendants in declaratory judgment action to resolve issue of coverage, specifying that action directly impacted the interests of both parties); *White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165 (4th Cir. 1990) (finding that employee injured while driving a company car could bring suit against her employer's insurer regardless of fact that her liability claim against tortfeasor was still pending in state court).[1]

Similarly, the Fourth Circuit has upheld the right of an injured third-party to appeal from a dismissal of an action for declaratory judgment brought by the insurer and the insured party. *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 374 (4th Cir. 1994) (holding that injured party, who had been assigned policy rights by bankrupted insured party, was sufficiently aggrieved to appeal dismissal of declaratory judgment action by insurer).[2] Operating under the same principles, the Third and Seventh Circuits have held that a third-party retains standing and that a controversy still exists in a declaratory judgment action against an insurer, even when the insured is dismissed from the action. *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174 (7th Cir. 1962) (stating that it would be anomalous to hold

---

[1] The fact that *White* involves uninsured and underinsured motorist insurance does not alter or color the principles set forth therein, as Friedman's contends. In *White*, the Fourth Circuit held that "The fact that [an injured party] has not obtained judgment against [an insured party] does not make the action any less definite and concrete, nor does it vitiate the adversity of the parties' interests." *White*, 913 F.2d at 168. The court made no attempt at qualifying their holding with an explanation as to the peculiarity of cases involving uninsured and underinsured motorist insurance.

[2] The  is not convinced, as Friedman's has attempted to argue, that the assigning of policy rights by the insured party to the injured party was the determinative factor in the dispute over justiciability in this case, but rather that this factor was emphasized in order to compensate for the fact that the injured party had not sought any affirmative relief on her own behalf prior to the dismissal of the declaratory judgment action.

that there is an actual controversy between the third-party and the insurer and yet deny the third-party the right to participate in the controversy).

In the case at bar, similar to the situation in *White v. Nat'l Union*, Plaintiffs are third parties to an insurance policy and, prior to a final judgment in their pending liability case, they are seeking a declaratory judgment against insurers as to the scope of the provided coverage. The fact that Federal and St. Paul remain the only means by which Plaintiffs may recover under their claim, coupled with the fact that the coverage dispute remains a significant obstacle to a settlement agreement, presents the Court with a genuine controversy regarding the legal rights and responsibilities of Plaintiffs and Friedman's EPLI insurers. As was noted in *Yeats*, that the liability of the insured or the tortfeasor has not yet been established does not diminish the real and concrete nature of the dispute. *Yeats*, 99 F.2d at 669.

Furthermore, the controversy at hand is of sufficient immediacy to warrant declaratory relief, as settlement negotiations will not recommence without a resolution of the coverage issue and, as Plaintiffs have pointed out, if the case is fully litigated on the merits prior to a determination of coverage, the remaining balance of around $2.3 million of the $5 million policy for which coverage is acknowledged, will be almost entirely depleted by defense costs by the time a judgment is handed down. (Pl.'s Reply Memo. in Supp. of Mot. to Amend., at 2.) The declaratory judgment claims against Federal and St. Paul are sufficiently definite and pressing in nature so as to present justiciable controversies.

    ii. <u>Declaratory Relief Is Prudential</u>

A federal court retains some discretion to decline to entertain a declaratory judgment action which is otherwise properly before the court. *See Nautilus Ins. Co.,* 15 F.3d at 375.

Courts have maintained that the statute providing for declaratory judgments should be liberally construed to accomplish its intended purposes, those being "to afford a speedy and inexpensive method of adjudicating legal disputes . . . and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Aetna Casualty and Surety Co. v. Quarles*, 92 F.2d 321 (4th Cir. 1937). Accordingly, the Fourth Circuit has held that district courts should normally consider a declaratory judgment action that is within its jurisdiction if the relief sought (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 325 (quoting E. Borchard, *Declaratory Judgments* 107-09 (1934)).

In the case at bar, Plaintiffs seek a declaration of the obligations of Friedman's insurers. Such declaratory relief would undoubtedly be useful in determining the parties' legal relationship by resolving the issue of whether or not St. Paul and Federal must indemnify Friedman's for monetary relief agreed to in a settlement or awarded in litigation. Resolution of this issue would dispel doubt among the parties, allowing them to reevaluate their legal posture and, in the case of a favorable judgment for the plaintiffs, allowing them to move forward with settlement talks. Given the history of the case, it seems almost certain that a favorable federal court decision regarding the issue of insurance coverage will expedite the resolution of the underlying complaint through a settlement agreement and, if the original intentions of the two parties remain the same, spare both parties the cost, in time and money, of a lengthy litigation process.

For the aforementioned reasons, the Court believes that declaratory relief is prudential in this case.

      iii.      Plaintiffs Have Standing To Bring A Declaratory Judgment Action.

The Supreme Court upheld the Declaratory Judgment Act of 1934 in *Haworth*, holding that "where there is such a concrete case admitting of an immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of litigants may not require the award of process or the payment of damages." *Haworth*, 300 U.S. at 241. With respect to such actions that seek only the determination of legal rights, the Court has applied less stringent standing requirements, holding that "allegations of threatened irreparable injury, which are material only if an injunction is asked, may likewise be dispensed with if, in other respects, the controversy presented is . . . real and substantial." *Nashville, Chattanooga & St. Louis R. Co. v. Wallace*, 288 U.S. 249, 264 (1933). A real and substantial controversy admits of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Haworth*, 300 U.S. at 241.

Plaintiffs in the case at bar meet these requirements for standing. Here, there exists an actual dispute regarding the legal relationship and responsibilities therein, between Plaintiffs and Federal and St. Paul. Due to Friedman's bankruptcy and resulting immunity from damages liability, along with the decision by Friedman's and its insurers to cease arbitration of the coverage dispute, Plaintiffs' settlement talks with Friedman's have been stalled, and Plaintiffs are presented with the real and imminent danger of having to proceed with lengthy and costly litigation despite looming uncertainty as to whether or not a judgment in their favor will prove to be at all fruitful. Because any recovery on the part of Plaintiffs is contingent upon coverage by Federal and St. Paul, and because a continued dispute over coverage will further delay settlement talks and breed continued

uncertainty and insecurity with regards to prospective litigation, the Court finds a substantial controversy between Plaintiffs and Friedman's insurers.[3] As the Fourth Circuit noted in *Nautilus*, "to delay resolution of the controversy until the underlying suit against the insured proceeds to judgment . . . would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs." *Nautilus*, 15 F.3d at 376.

A judgment by the Court would be of a "conclusive character," rather than an advisory opinion as to what the law is under hypothetical facts. The Court is asked to decide whether, if proven, the alleged incidents of discrimination would fall within the scope of coverage contemplated in each of the insurers' policies. The Court is not asked to take creative liberties to imagine a scenario in which incidents of discrimination may be covered, but to apply the policy provisions to actually alleged incidents for the purpose of resolving the issue of coverage. As the Fourth Circuit has held with regards to insurer coverage disputes, "the fact that an injured party has not obtained a judgment against an insured party does not make the action any less definite and concrete, nor does it vitiate the adversity of the parties' interests." *White v. Nat'l Union*, 913 F.2d at 168.

---

[3] Although it is not known for certain that resolving the issue of coverage will prompt a return to settlement talks and expedite resolution of the case, prior communications between parties and representations made to this Court suggest that the unresolved issue of coverage remains the primary obstacle to arriving at a settlement agreement. (Letter from Def.'s Attorney to the Court, Dated 12/02/04).

11

**III.    CONCLUSION**

For all the aforementioned reasons, the Court will GRANT Plaintiffs' Motion For Leave to File an Amended Class Action Complaint [46]. An order consistent with this opinion will follow.

Date:  June 28, 2006                                /s/
                                             Alexander Williams, Jr.
                                             United States District Court